UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BERNARD J. DOBRANSKI,

        Petitioner,

-vs-

MARK L. BRADT, SUPERINTENDENT
ATTICA CORRECTIONAL FACILITY

        Respondent.
_____

**DECISION AND ORDER**
**No. 12-CV-06331MAT**

## I. Introduction

*Pro se* Petitioner Bernard J. Dobranski ("Petitioner") has timely filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] challenging the constitutionality of the administrative decision made by the New York State Division of Parole denying him parole.

For the reasons that follow, habeas relief is denied and the petition is dismissed.

## II. Factual Background and Procedural History

### A. Conviction, Sentence, and Denial of Parole

On October 24, 1980, Petitioner was convicted in New York State, County Court, Chemung County, upon a jury verdict, of Attempted Murder in the First Degree (Penal Law §§ 110.00, 125.27), and sentenced to twenty years to life imprisonment. See Resp't

---

[1] Petitioner initially brought the petition under 28 U.S.C. § 2241, but the Court converted it to one brought under § 2254. See Orders of 07/03/2012 and 08/08/2012).

Ex. A (Commitment to State Dept. of Corr. Services); Resp't Ex. F (People's Answer to Article 78 Petition) attaching Ex. H (Sentencing Mins. of 10/24/1980).

On November 3, 2009, following Petitioner's sixth application for parole, a panel of the Division of Parole ("Parole Board") held a hearing at which Petitioner was interviewed. See Resp't Ex. B (Parole Trans. of 11/03/2009 hearing). On November 9, 2009, the Parole Board issued a decision denying parole and ordering a 24-month hold. See id. at 8-9; Resp't Ex. C (Parole Board Decision of 11/09/2009). Specifically, the Parole Board found as follows:

> [a]fter a careful review of your record, your personal interview and due deliberation, it is the determination of this Panel that, if released at this time, there is a reasonable probability that you would not live at liberty without violating the laws.
>
> Your release at this time is incompatible with the welfare and safety of the community, and will so deprecate the seriousness of this crime as to undermine respect for the law.

Id.

The Parole Board found further that:

> This decision is based upon the following factors: you stand convicted of an instant offense of attempted murder in the first degree; wherein, you got in a scuffle with a deputy sheriff, wherein, your gun went off and you hit the deputy. Prior to this offense, you intended to commit a robbery.
>
> These crimes show a tendency toward violence and your willingness to put your own needs before those of society. Prior to the

>     instance offense you have a prior conviction
>     for burglary.
>
>     You show no remorse for your actions.
>
>     Consideration has been given to your program
>     completion and satisfactory behavior; however,
>     your release at this time is denied.

Id.

On January 19, 2010, Petitioner filed an administrative appeal with the Division of Parole Appeals Unit ("Appeals Unit"). See Resp't Ex. D (Pet's Admin. Appeal). The Appeals Unit did not act on Petitioner's appeal within the four months required under 9 N.Y.C.R.R. § 8006.4(c).[2] See Resp't Ex. F (Affirmation) at ¶ 10 & n.1.

**B. The Article 78 Proceedings**

On or about May 27, 2010, Petitioner filed in Albany County Supreme Court a *pro se* petition pursuant to Article 78 of the New York Civil Practice Law and Rules ("C.P.L.R.") challenging the Parole Board's denial of his release to parole supervision. Petitioner argued, *inter alia*, that the Parole Board violated his due process rights by: (1) relying, to the exclusion of other

---

[2] 9 N.Y.C.R.R. § 8006.4(c) provides that:

> [s]hould the appeals unit fail to issue its findings and recommendation within four months of the date that the perfected appeal was received, the appellant may deem this administrative remedy to have been exhausted, and thereupon seek judicial review of the underlying determination from which the appeal was taken. In that circumstance, the division will not raise the doctrine of exhaustion of administrative remedy as a defense to such litigation.

factors, upon the severity of Petitioner's criminal offense; (2) denying Petitioner parole even though other similarly-situated inmates had been granted parole; (3) erroneously determining that Petitioner lacked remorse for his crime; (4) denying him parole based on the Parole Board's "belief" that Petitioner would commit some unspecified crime in the future; and (5) erroneously determining that Petitioner had intended to commit a robbery prior to the shooting for which he was convicted. See Resp't Ex. E. The People filed an Answer thereto. Resp't Ex. F. In a Decision and Order dated September 14, 2010, the Albany County Supreme Court dismissed the petition. Resp't Ex. G.

Petitioner filed a *pro se* appeal in the Appellate Division, Third Department, in which he raised the same claims raised in his Article 78 petition. Resp't Ex. H. The People filed an opposition brief (Resp't Ex. I), and Petitioner submitted a reply brief (Resp't Ex. J). On April 28, 2011, the Appellate Division unanimously affirmed the decision below, and leave to appeal was denied. Dobranksi v. Evans, 83 A.D.3d 1355 (3d Dep't 2011) (Resp't Ex. K), lv. denied, 17 N.Y.3d 709 (2011) (Resp't Ex. N).

**C.    The Federal Habeas Corpus Petition**

On or about June 20, 2012, Petitioner filed the instant habeas corpus petition and supporting memorandum of law (Dkt. No. 1) in which he seeks relief on the basis that the Parole Board violated his federal constitutional "liberty" rights when it denied him

parole on the ground that "he would violate an unspecified law some-time in the future." Pet. Mem. at 2-4; see also Pet. at ¶ 2. In his supporting memorandum, Petitioner clarifies that, "[i]n other words, in order to justify denying [P]etitioner release to liberty, [the Parole Board] alleg[ed] a new criminal accusation against [P]etitioner, one which is separate and distinct from [P]etitioner's instant conviction and probable cause determination."[3] Pet. Mem. at 3.

Respondent filed an answer and opposing memorandum of law on October 22, 2012. Dkt. Nos. 9, 10. On November 27, 2012, Petitioner filed a Traverse/Reply. Dkt. No. 11.

## III. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526

---

[3]
In his Traverse/Reply at ¶ 3, Petitioner, faulting Respondent for incorrectly characterizing the habeas petition as raising only a single habeas claim, maintains that he is not only asserting a "Due Process Claim under U.S.C.A. Const. Amend. 14[,]" but is also "asserting claims under U.S.C.A Const. Amend.s 4, 5, 6, 8 & 13." Traverse/Reply at 2. Petitioner, however, does not further substantiate this statement with pertinent facts or legal arguments, but, instead, directs the Court generally to his supporting memorandum. While the Court is mindful that it must construe Petitioner's *pro se* pleadings liberally, it is unable to discern how or in what way Petitioner is "asserting claims" under the Fourth, Fifth, Sixth, Eighth and Thirteenth Amendments, as he ambiguously contends. In short, the Court has read Petitioner's habeas petition, his supporting memorandum, and his Traverse/Reply, and construe the arguments contained therein as a challenge to the Parole's Board's November 9, 2009 decision on due process grounds.

U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).

In order to exhaust claims stemming from a denial of parole under New York law, a habeas petitioner must first file an administrative appeal with the Division of Parole's Appeals Unit. Morel v. Thomas, No. 02 CV 9622(HB), 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n.3 (S.D.N.Y. June 26, 2003) (citing N.Y. Comp. Codes. R. & Regs. tit. 9, § 8006.1).  If that appeal is denied, he must seek relief in New York State Supreme Court pursuant to C.P.L.R. Article 78. Id. (citing Desire v. New York Division of Parole, 2001 U.S. Dist. LEXIS 13784, at *6 (S.D.N.Y. Aug. 22, 2001)). Assuming his Article 78 petition is denied, the inmate must then appeal the denial to New York's intermediate appellate court, the Appellate Division. See Morel, 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *2 n. 3 ("Morel did appeal his denial to the Appeals Unit, and he also filed an appeal in New York Supreme Court pursuant to Article 78.").

Here, Petitioner properly raised his habeas claim in the state courts. He timely filed an administrative appeal with the Appeals Unit on January 19, 2010. See Resp't Ex. D. The Appeals Unit did not rule on the appeal, and the appeal was therefore deemed exhausted after four months. See 9 N.Y.C.R.R. § 8006.4[c]. See Resp't Ex. F. Petitioner then filed an Article 78 petition, which was denied on September 22, 2010. Resp't Ex. G. Petitioner

appealed the denial, and the Appellate Division affirmed the lower court ruling on April 28, 2011. He then sought leave to appeal, which was denied by the New York Court of Appeals on September 15, 2011. Resp't Exs. I, K.

Accordingly, Petitioner's habeas claim is exhausted[4] and is properly before this Court.

**IV. The AEDPA Standard of Review**

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

In this case, Petitioner's habeas claim was adjudicated on the merits in the state courts, and the AEDPA standard of review therefore applies. Under that standard, Petitioner's claim is meritless.

---

4

Respondent does not raise exhaustion as an affirmative defense to the petition, and concedes that Petitioner's habeas claim is exhausted for federal habeas purposes. See Resp't Mem. of Law (Dkt. No. 9) at 7-8.

**V. Analysis of the Petition**

Petitioner argues that the Parole Board violated his federal constitutional right to "liberty" when it denied him parole based on the possibility that he would commit some unnamed crime in the future. See Pet. at ¶ 2; Pet's Mem. at 2-4. According to Petitioner, the "Parole Board . . . did not have the lawful authority to deny [him] release to liberty because they believed that, if they released [him] to liberty, [he] would violate an unspecified law sometime in the future . . . ." Pet. Mem. at 4. The state court adjudicated this claim on the merits,[5] and the AEDPA standard of review therefore applies. Under that standard, Petitioner's claim is meritless. Petitioner appears to be arguing in his Traverse/Reply at ¶ 6 that the state court's adjudication of this claim is not entitled to AEDPA deference, pointing to Respondent's allegedly misplaced reference to Harrington v. Richter, a 2011 Supreme Court case clarifying when AEDPA deference is warranted in federal habeas corpus cases. To be sure, the Appellate Division summarily rejected this claim when Petitioner raised it on direct appeal (see footnote 5 above). Even when a state court decision is merely a summary denial of a petitioner's claim, as is the case here, it is to be construed as an "adjudication on the merits" triggering the deferential standard of

---

[5] See Dobranksi, 83 A.D.3d at 1356 (finding that Petitioner's remaining contentions were "without merit").

review in 28 U.S.C. § 2254. See Harrington v. Richter, 131 S.Ct. 770, 784-85, 178 L. Ed. 2d 624 (2011)("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary"). No accompanying explanation or statement of reasons is necessary. Id. Therefore, even though the Appellate Division made no explicit reference to Petitioner's claim when it summarily denied his remaining contentions on appeal, the Court is bound to apply the deferential standard of review in §2254(d) to this claim: i.e., the petition may only be granted if Petitioner can show that either the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). As discussed below, Petitioner has not and cannot make such a showing.

It is well established that an inmate does not have a constitutional right to parole. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Barna v. Travis, 239 F.3d 169, 171 (2d Cir. 2001) (finding that the New York parole system does not create "in any prisoner a legitimate expectancy of release"); Mathie v. Dennison, 2007 U.S. Dist. LEXIS 60422, 2007

WL 2351072, at *6 (S.D.N.Y. 2007). Under state law, however, the Parole Board's decision is not unlimited. New York law provides that "discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while confined." N.Y. Exec. Law § 259-i(2)(c)(A). Rather, the Board may grant parole after "considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." Id. To guide the Board in its decision, the statute outlines five factors that must be considered:

> (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;
>
> (ii) performance, if any, as a participant in a temporary release program;
>
> (iii) release plans including community resources, employment, education and training and support services available to the inmate;
>
> (iv) any deportation order issued by the federal government against the inmate while in the custody of the department of correctional services and any recommendation regarding deportation made by the commissioner of the department of correctional services pursuant to section one hundred forty-seven of the correction law; and
>
> (v) any statement made to the board by the crime victim or the victim's representative, where the crime victim is

> deceased or is mentally or physically incapacitated.

See N.Y. Exec. Law § 259-i(2)(c); 9 N.Y.C.R.R. § 8001.3. The statute does not, however, guide the Board regarding how much weight it should assign to each factor. See Farid v. Bouey, 554 F.Supp.2d 301, 321 (N.D.N.Y. 2008). Additionally, "the Board 'shall consider' 'the seriousness of the offense' and 'prior criminal records, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement.'" N.Y. Exec. Law § 259-i(2)(c)(A), by incorporation of § 259-i(1)(a).

Although, as noted above, New York's discretionary parole system does not create a legitimate expectancy of release that gives rise to a due process right, Barna, 239 F.3d at 171, the Parole Board may not deny Petitioner's application for parole for "arbitrary or impermissible reasons." Brown v. Thomas, 2003 U.S. Dist. LEXIS 3396, 2003 WL 941940, at *1 (S.D.N.Y. 2003) (internal citations omitted); see also Farid, 554 F.Supp.2d at 321; Mathie, 2007 U.S. Dist. LEXIS 60422, 2007 WL 2351072, at *6. An inmate's due process rights are violated when the Parole Board denies "release arbitrarily or capriciously, based on inappropriate consideration of a protected classification or an irrational distinction, or on any other unconstitutional grounds." Morel v.

Thomas, 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *4 (S.D.N.Y. 2003).

The transcript of the parole hearing (as well as the Parole Board's decision) reveals that the Parole Board properly considered the relevant statutory guidelines and factors set forth above when it decided to deny Petitioner parole. First, the Parole Board examined the underlying facts of Petitioner's crime of attempted murder in the first degree for which he was presently incarcerated. See Resp't Ex. B (Parole Tr.) at 2. Next, the Parole Board acknowledged Petitioner's institutional record, including his program completion and his satisfactory behavior. Parole Tr. at 4. The Parole Board also noted that, if released, Petitioner would reside with his family in Elmira and work at home. Tr. at 4-5. The Parole Board acknowledged further that members of the community, including his mother, niece, nephew, a friend of the family, and members of prior Boards had submitted letters on Petitioner's behalf. Tr. at 5. The Parole Board also considered Petitioner's education, and that Petitioner had acted as a teacher's aide since his last Parole Board appearance. Tr. at 6.

In arriving at its decision, the Parole Board considered the instant offense, Petitioner's "tendency toward violence and willingness to put [his] own needs above those of society," his prior criminal history, his lack of remorse for his actions, as well as his institutional program completion and satisfactory

behavior. See Resp't Ex. C at 2-3. The Board thus decided that factors in Petitioner's favor were outweighed by the the nature and severity of the underlying crime and his prior criminal history. Indeed, the "Board was entitled to determine that the nature of the crime outweighed the positive aspects of his record." Morel, 2003 U.S. Dist. LEXIS 10935, 2003 WL 21488017, at *5. "Where a Board has properly considered statutory guidelines, it may . . . deny parole where it determines upon fair consideration of all relevant statutory factors that the nature and severity of the underlying crime outweigh other possibly positive factors." Graziano, 2006 U.S. Dist. LEXIS 52556, 2007 WL 2023082, at *8. Additionally, the "Board has discretion to accord these considerations whatever weight it deems appropriate, and need not expressly discuss each of the reasons in its determination." Manley v. Thomas, 255 F. Supp. 2d 263, 267 (S.D.N.Y. 2003) (citing Garcia v. N.Y.S. Div. of Parole, 239 A.D.2d 235, 657 N.Y.S.2d 415, 418 (App. Div. 1st Dep't 1997)).

Morever, the Court rejects Petitioner's specific contention that it was unfair and/or improper for the Parole Board to deny parole based on the possibility that Petitioner would commit some unnamed crime in the future. This argument fails insofar as Petitioner's likelihood to return to crime was not a *factor* relied upon by the Parole Board in denying parole but a *conclusion* it drew based on the seriousness of the underlying offense and his prior

criminal history.  Because the Parole Board is permitted to consider the seriousness of Petitioner's crime and his prior criminal history, it did not act arbitrarily or impermissibly by concluding that Petitioner had the potential to return to crime as demonstrated by the severity of the underlying offense and his prior criminal history.

While it is evident from Petitioner's pleadings that he disagrees with what he perceives as an unfair parole determination by the Board, the Court cannot agree that the Board's decision was either arbitrary or impermissible, or contrary to New York law. The record clearly demonstrates that the Board took into account the relevant statutory guidelines and factors and made a reasoned decision.

Accordingly, the Parole Board's determination of this claim, as affirmed by the Appellate Division, was neither contrary to, nor an unreasonable application of clearly established Supreme Court law.  Nor can it be said that the state court decision was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Petitioner's claim is meritless and therefore denied in its entirety.

## VI. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied

and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: December 3, 2013
Rochester, New York